# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

HORIZON/CMS HEALTHCARE CORPORATION
and HEALTHSOUTH CORPORATION,

        Plaintiffs,

vs.                                                                            No. CV 99-966 JP/LFG

AMERICAN CONTINENTAL INSURANCE
COMPANY and MARC A. BERNSTEIN, ESQ.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On October 29, 1999 Defendant American Continental Insurance Company filed a Motion To Stay Pending Determination of the Proper Venue in the First Filed Lawsuit (Docket No. 23). On February 8, 2000 Plaintiffs filed a Motion For Leave To File Supplemental Brief in Opposition To Defendant ACIC's Motion To Stay Pending determination of Proper Venue (Docket No. 58). On October 29, 1999 Defendant Marc A. Bernstein, Esq. filed a Motion To Dismiss the First Amended Complaint (Docket No. 19). On December 23, 1999, by consent of all parties, Plaintiffs filed their Second Amended Complaint. The parties agreed that Defendant Bernstein's motion to dismiss will be deemed to be directed against the second amended complaint so that refiling the motion is not necessary. After carefully considering the briefs, the pleadings, and the applicable law, I conclude that Defendant ACIC's Motion To Stay should be GRANTED,

that Plaintiff's Motion To File Supplemental Brief should be DENIED, and that Defendant Bernstein's Motion to Dismiss should be GRANTED IN PART.

**I. BACKGROUND**

On August 18, 1999 Defendant American Continental Insurance Company ("ACIC") filed suit in Texas state court against Plaintiff Horizon/CMS Healthcare Corporation ("Horizon") and HealthSouth Corporation ("HealthSouth") seeking a declaratory judgment that certain ACIC insurance policies issued to Horizon and HealthSouth do not provide coverage for punitive damage awards in personal injury actions filed against the companies in Texas and Massachusetts. On August 24, 1999 Plaintiffs Horizon and HealthSouth filed this action in New Mexico federal court seeking, among other things, a declaratory judgment that the same ACIC policies do provide coverage for punitive damages. Plaintiffs also allege that Defendant Marc A. Bernstein, Esq., a New Mexico attorney, breached his fiduciary duty to Horizon, for which they seek damages and injunctive relief. On September 15, 1999 the Texas state court action was removed to federal court.[1]

Plaintiffs operate various healthcare facilities in Texas, New Mexico, and other states. Underlying these insurance coverage cases pending here and in Texas are dozens

---

[1] That case is pending in the United States District Court for the Northern District of Texas, Dallas Division, American Continental Insurance Company v. Horizon/CMS Healthcare Corporation . . . and HealthSouth Corporation, Civil Action Number 3-99CV2088-L.

of personal injury lawsuits filed against Plaintiffs Horizon and/or HealthSouth. The number of underlying lawsuits has been on the rise; of the 31 cases pending at the time the Second Amended Complaint was filed, 23 were in Texas state courts, one (1) was in New Mexico, and seven (7) were in other states. ACIC insures Plaintiffs for certain liabilities arising out of their operation of the facilities, and is providing a defense to Plaintiffs in each of the underlying lawsuits. The claimants in those cases have accused Plaintiffs of acts of gross corporate negligence or other conduct which, if proven, could give rise to awards of punitive damages. ACIC has informed Plaintiffs that it may not provide coverage for punitive damages judgments, and has invited Plaintiffs to make contributions towards settlement offers in the underlying lawsuits to reflect their potential liability for punitive damages and related defense costs.

## II. DEFENDANT ACIC'S MOTION TO STAY

Defendant ACIC requests that this Court stay these proceedings pending the determination of proper venue by the Texas court. When two federal courts have concurrent jurisdiction of cases involving the same parties and mirror-image issues (such as here where both cases seek construction of the same provisions of the same insurance policies), "the court which first obtains jurisdiction should be allowed to first decide issues of venue." Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir. 1982). This so-called "first-filed rule" is necessary to avoid the specter of conflicting

venue decisions.[2]

It is undisputed that the Texas state case was filed first. Plaintiffs attempt to escape the holding of Hospah Coal Co. by asserting that the Texas federal court did not obtain jurisdiction first because the removal to federal court in Texas occurred after this case was filed in New Mexico. For purposes of applying the first-filed rule, however, a federal court acquires jurisdiction of a removed case as of the date of filing in state court. Igloo Prods. Corp. v. The Mounties, Inc., 735 F. Supp. 214, 217 (S.D. Tex. 1990); Ultronic Systems Corp. v. Ultronix, Inc., 217 F. Supp. 89, 92 (D. Del. 1963). Any other rule would give the defendant in the first-filed state case inordinate control of the federal venue determination simply by waiting to file its removal petition in the first case until after it filed the second case in its preferred federal court. Indeed that is what happened here. I find that the Texas federal court acquired jurisdiction first. That court must, therefore, decide the merits of the venue question.

Plaintiffs make several arguments ostensibly in opposition to the motion to stay that are really directed to the merits of the venue question. They contend, for example, that the New Mexico action is more comprehensive than the Texas case because it contains an extra party (Defendant Bernstein) and more causes of action, and it involves

---

[2] The first-filed rule has another aspect: it may also impact the merits of the venue question. In other words, an important factor in deciding the question of proper venue is which court first acquired jurisdiction. Other factors may outweigh the first-filed rule, however, in which case venue could lie in the district of the "second-filed" court. Hospah Coal Co., 673 F.2d at 1164; *see* Kerotest Mfg. Co. v. C-0-Two Co., 342 U.S. 180, 185-86 (1952) (discussing venue factors of forum shopping, convenience, joinder of parties). These factors are for the first-filed court to decide.

more underlying actions. They also contend that their choice of forum should be honored because they are the "natural plaintiffs" or the "real plaintiffs." This contention is premised on the fact that Horizon and HealthSouth assert damages claims against Defendants in this case, which makes them the injured parties in the insurance coverage dispute. They also accuse Defendants of preemptive forum shopping to divest Plaintiffs, the policyholders, of their choice of forum. Plaintiffs also argue that New Mexico is a more appropriate forum than Texas because of witness availability, and because New Mexico law should be applied to interpret the insurance policies at issue, some of which were sold in New Mexico. Under the procedure outlined by the Tenth Circuit in <u>Hospah Coal Co.</u>, these arguments, which go to the merits of the venue question, are immaterial to the motion to stay, and may only be considered by the Texas court in ruling on proper venue.

The motion to stay will be granted.

### III. PLAINTIFFS' MOTION TO SUPPLEMENT

Plaintiffs seek to supplement the record with additional facts to support their opposition to the motion to stay. I find, however, that all the information they seek to add to the record is relevant only to the merits of the venue decision and is immaterial to the limited issues involved in the stay motion. Therefore, this motion will be denied.

## IV. DEFENDANT BERNSTEIN'S MOTION TO DISMISS

Plaintiffs' Sixth Claim For Relief seeks compensatory damages and punitive damages against Defendant Bernstein for alleged breach of fiduciary duty. In their Seventh Claim For Relief, Plaintiffs seek broad injunctive relief barring Bernstein from acting for ACIC in these coverage issues, in the underlying tort cases, or in any work related to any business of Horizon or HealthSouth or any of their affiliates. Defendant Bernstein contends that the sixth claim should be dismissed because Plaintiffs have failed to allege all the essential elements of the cause of action for breach of fiduciary duty, specifically causation and damages. He also seeks dismissal of any claim for punitive damages because Plaintiffs have failed to allege the requisite culpable mental state. Finally, he seeks dismissal of the seventh claim for injunctive relief because Plaintiffs have failed to allege the essential elements of inadequate remedy at law and irreparable harm.

*Standards for Motion To Dismiss.* For purposes of a motion to dismiss for failure to state a claim, the material factual allegations in the complaint are considered as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Riggs v. City of Albuquerque, 916 F.2d 582, 584-86 (10th Cir. 1990); Dewell v. Lawson, 489 F.2d 877, 879 (10th Cir. 1974). Although the Court accepts as true all the well-pleaded allegations in the complaint, it need not accept conclusory allegations. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). Only if, after liberal construction of the pleadings, there appears no possibility that a plaintiff can prove a set of facts which would entitle him to

relief should the motion to dismiss be granted. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Gas-a-Car, Inc. v. American Petrofina, Inc., 484 F.2d 1102, 1107 (10th Cir. 1973).

The complaint alleges that when Bernstein was employed as in-house counsel[3] by Horizon, he oversaw the handling of several lawsuits filed by third parties, including the *Fuqua* and *Caudill* actions, that were and are pending against Horizon and HealthSouth. He acted as liaison between Horizon and its litigation defense counsel, who were hired by Horizon's insurer, St. Paul, and he communicated about the cases with other Horizon lawyers as well as its senior management. St. Paul asserted numerous potential arguments against insurance coverage for punitive damages in the lawsuits. Bernstein was "privy to the facts and issues surrounding insurance coverage for the Fuqua and Caudill actions." 2d Am. Compl. ¶ 44. Now Bernstein works for ACIC as a claims consultant, and has overseen the underlying actions against Horizon, including *Fuqua* and *Caudill*, in which Horizon asserts claims against its insurer ACIC, "including the availability of insurance coverage" for punitive damages. Id. ¶ 47. Bernstein was involved in "the forming and communicating of ACIC's insurance coverage positions to Horizon and HealthSouth as those positions related to the Fuqua and Caudill actions." Id. In doing so, he adopted a claims position directly adverse to the interests of Horizon, his former client.

---

[3] His official title was Associate Counsel and General Liability Manager.

Also, Bernstein, while employed by ACIC, communicated about the handling of *Fuqua* and *Caudill* and other cases with claims representatives from the other insurance company (St. Paul) that provided coverage to Plaintiffs even though he knew that both insurance companies adopted positions directly adverse to Horizon. He even wrote letters to Horizon on behalf of ACIC about these contrary matters. "A substantial risk exists that, on behalf of ACIC, Bernstein has used confidential information obtained while working at Horizon to formulate positions adverse to the interests of Horizon and HealthSouth in denying Horizon's and HealthSouth's claims." Id. ¶ 51. ACIC agreed to remove Bernstein from working on coverage issues on Horizon's and HealthSouth's policies, but then he appeared as ACIC's representative at a mediation in the *Fuqua* case. "Bernstein's past and continuing involvement with the Underlying Actions jeopardizes and compromises Plaintiffs' confidential information and attorney work-product and could cause irreparable harm to Plaintiffs." Id. ¶ 54.

*Claim for Breach of Fiduciary Duty.* The elements of a cause of action for breach of fiduciary duty are: duty, breach of duty, proximate cause, and damages. *See* GCM, Inc. v. Kentucky Central Life Ins. Co., 124 N.M. 186, 191, 947 P.2d 143, 148 (1997) (listing elements for aiding and abetting breach of fiduciary duty); *see also* Restatement (2d) Torts § 874. Bernstein's motion to dismiss targets the elements of causation and damages. Bernstein contends that Plaintiffs have failed to suffer, or even to allege, any actual injury caused by the purported breach of fiduciary duty.

The only causation allegation is the following:

8

> As a direct and proximate result of the foregoing violations and breach by Bernstein of the trust and confidence which [Horizon] placed in him, . . . the Plaintiffs have suffered . . . damages . . . .

2d Am. Compl. ¶ 82.

Taking all the factual allegations as true, it is inconceivable to me how Horizon could have suffered any harm caused by Bernstein's alleged breach of fiduciary duty. If the insurance contracts provide coverage, then Plaintiffs will prevail, either here or in the Texas declaratory judgment action. If not, they will be exposed to uninsured liability for potentially large punitive damages awards in the underlying lawsuits, and possibly for a share of the defense costs in those suits. But the Plaintiffs do not allege that ACIC's coverage position resulted from or was influenced by Bernstein's disclosure of any confidential or privileged information, and no inference even arises that the coverage dispute now at issue between the parties is a result of anything Bernstein did or failed to do.

The same insurance coverage issues were raised in a case prosecuted in this district between Plaintiff HealthSouth and its other insurer, St. Paul. <u>HealthSouth Corporation, Plaintiff, v. St. Paul Fire and Marine Insurance Company, et al., Defendants</u>, No. CIV 98-800 BB/DJS. That case was filed in June 1988 and was settled in March 2000. This indicates that these insurance coverage issues are not new, so that any alleged breach of Bernstein's fiduciary duty to Plaintiffs that occurred beginning in April 1998 when he started working for ACIC could not have been what caused ACIC to deny

9

coverage in the underlying actions involved in the present case. Further, in their response, Plaintiffs completely ignore the question of causation. I conclude that the conclusory allegation quoted above is insufficient to allege causation.

Defendant Bernstein also contends that Plaintiffs' allegations as to compensatory damages are insufficient. The complaint alleges only that Plaintiffs have "suffered, and are in imminent danger of suffering further, damages in an amount to be determined." 2d Am. Compl. ¶ 82. A reading of the entire complaint suggests that Plaintiffs are suing Bernstein not for past or present damage, but rather for the potential of future damage.

Plaintiffs respond only that "Bernstein potentially jeopardized the availability of insurance coverage for Underlying Actions asserted against plaintiffs." Pl. Resp. at 8. From this response, I deduce that the nature of damages Plaintiffs seek is whatever liability might be imposed on them for uninsured punitive damages awarded against them in the underlying actions, either by way of judgment or settlement. This is confirmed by Plaintiffs' response filed in connection with a motion for discovery sanctions. Plaintiffs explained that their only claim for damages is for their future liability for punitive damages in the underlying actions. Plaintiffs also maintained that they might bring claims for other types of damages after discovery, such as costs of defense and costs incurred in a Texas case in which Bernstein executed an affidavit taking a position adverse to the interests of Horizon, and forfeiture of fees paid to Bernstein. No such claims have been alleged.

Aside from my difficulty in perceiving a possible nexus connecting Bernstein's

alleged breach of fiduciary duty and Horizon's eventual liability for uninsured punitive damages, it is undisputed that none of the underlying actions has yet yielded a judgment or settlement involving punitive damages. Further, only if Plaintiffs lose the declaratory judgment on this issue will they ever be liable for uninsured punitive damages.

In New Mexico, future damages are actionable only if proved with reasonable certainty. Rael v. F & S Co., 94 N.M. 507, 511, 612 P.2d 1318, 1322 (Ct. App. 1979) (*citing* Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co., 65 N.M. 301, 306, 336 P.2d 1057, 1061 (1959) and Winder v. Martinez, 88 N.M. 622, 623-24, 545 P.2d 88, 89-90 (Ct. App.), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1976)). "The ultimate fact which the plaintiff has the burden of proving is future damages reasonably certain to occur as a result of the original injury." Rael at 511, 612 P.2d at 1322. I conclude that the future damages sought here by Plaintiffs are entirely too speculative to state a claim.

A logical nexus is missing between Bernstein's alleged use of Horizon's confidential information and the denial of coverage for punitive damages by ACIC. Consequently, the Sixth Claim for Relief alleging breach of fiduciary duty by Defendant Bernstein will be dismissed and leave to amend will not be granted.


Defendant Bernstein next argues that Plaintiffs have failed to allege the requisite culpable mental state to support their claim for punitive damages. In New Mexico, punitive damages serve the limited purposes of punishing a wrongdoer and deterring future tortious conduct. Torres v. El Paso Elec. Co., 127 N.M. 729, 987 P.2d 386, 398

(1999). A defendant's conduct must rise to the level of willful, wanton, malicious, reckless, fraudulent, or bad faith behavior to justify an award of punitive damages. *See* Paiz v. State Farm Fire & Casualty Co., 118 N.M. 203, 211, 880 P.2d 300, 308 (1994) (holding award of punitive damages requires evidence of "evil motive" or "culpable mental state"); McGinnis v. Honeywell, Inc., 110 N.M. 1, 9, 791 P.2d 452, 460 (1990) ("culpable mental state" is prerequisite to liability for punitive damages); UJI-CV 13-1827 NMRA 2000 (jury instruction on punitive damages).

Plaintiffs respond only that punitive damages may be awarded for breach of fiduciary duty, citing Garcia v. Coffman, 124 N.M. 12, 946 P.2d 216 (Ct. App. 1997), and that they have stated a claim for breach of fiduciary duty. This begs the question of whether Plaintiffs have alleged the requisite culpable state of mind on Bernstein's part that might entitle them to an award of punitive damages. I find that they have not.

If the claim for breach of fiduciary duty were not being dismissed, I would allow Plaintiffs the opportunity to amend their complaint to allege the requisite state of mind, but under the circumstances, that would be futile.

*Claim for Injunctive Relief:* In the Seventh Claim for Relief, Plaintiffs request a permanent injunction against Defendant Bernstein based on his alleged conflict of interest, disloyalty, and improper divulging of privileged and confidential information. Bernstein argues that the claim for injunctive relief should be dismissed because Plaintiffs fail to allege that they have no adequate legal remedy. He also contends that the

allegation regarding the element of irreparable harm is insufficient to state a claim because it is conclusory.

Plaintiffs respond that the complaint alleges that Bernstein has switched sides on matters involving the existence of liability insurance coverage for claims asserted in litigation filed against them by third parties. They point to this language in the complaint as satisfying their pleading requirements:

> ¶ 51. A substantial risk exists that, on behalf of ACIC, Bernstein has used confidential information obtained while working at Horizon to formulate positions adverse to the interests of Horizon and HealthSouth in denying Horizon's and HealthSouth's claims.

They argue that because their claim is to prevent misuse of confidential information by an attorney, they are entitled to injunctive relief.

Irreparable harm and inadequacy of legal remedies are requirements for injunctive relief in federal court. Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 506-07 (1959); Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986). The same is true in New Mexico state court. *See* Insure New Mexico, Llc. v. McGonigle, ___ N.M. ___, 995 P.2d 1053, 1956 (Ct. App. 2000) (listing factors); Wilcox v. Timberon Protective Ass'n, 111 N.M. 478, 486, 806 P.2d 1068, 1076 (Ct. App. 1990) ("In New Mexico, injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law"), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991).

Injunctive relief in the form of disqualification of an attorney from representing a

new client is available where there is an imminent risk that the attorney will use confidential information against a former client; it must be shown that the present representation is in a substantially related matter that causes a conflict of interest. *See, e.g.,* Leon, Ltd. v. Carver, 104 N.M. 29, 31, 715 P.2d 1080, 1082 (1986); Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382-85 (10th Cir. 1994); Coles v. Arizona Charlie's, 973 F. Supp. 971, 973-74 (D. Nev. 1997); Bryant v. Ellis, 724 P.2d 811, 813-14 (Or. 1986). Broader injunctive relief may be available against an attorney who possesses relevant confidential information of a former client and is presently representing that client's competitor. *See, e.g.,* The Hyman Cos. v. Brozost , 964 F. Supp. 168, 173-74 (E.D. Penn. 1997); Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1285 (Pa. 1992).

In any such case, however, a plaintiff must still meet the pleading and proof requirements to be entitled to injunctive relief. A plaintiff must allege facts to show that he is about to be irreparably harmed. *See* Hobbs v. Town of Hot Springs, 44 N.M. 592, 106 P.2d 856, 858 (1940) (when sufficiency of complaint to warrant granting injunction is challenged, court examines allegations to determine whether complainant has adequate remedy at law and whether facts alleged show he is about to be irreparably damaged); Waters v. School Bd. of Broward County, 401 So.2d 837, 838 (Fla. App. 1981) (complainant alleging irreparable injury must state facts which will enable court to judge whether injury will in fact be irreparable); *see also* Tucker Anthony Realtor Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) ("To establish irreparable harm, plaintiffs

must demonstrate an injury that is neither remote nor speculative, but actual and imminent").

It is true that the complaint contains no allegation whatsoever about the inadequacy of any legal remedy, and Plaintiffs fail to address this issue in their response. However, because I am dismissing their claim for damages, I will assume their legal remedy is in fact inadequate.

This leads to the next question of whether Plaintiffs have adequately alleged the element of irreparable harm. It is true that the allegations of irreparable harm in the Second Amended Complaint are conclusory:

> ¶ 54. Bernstein's past and continuing involvement with the Underlying Actions jeopardizes and compromises Plaintiffs' confidential information and attorney work-product and could cause irreparable harm to Plaintiffs.
> . . .
> ¶ 87. To prevent irreparable harm to Plaintiffs, Plaintiffs seek an injunction against ACIC and Bernstein to enjoin Bernstein from any involvement with respect to the Underlying Actions and from performing any work related to any business of Horizon or HealthSouth or any of their affiliates.

However, these allegations must be read in light of the rest of the allegations concerning Bernstein's actions:

1. When he was in-house counsel for Horizon, Bernstein oversaw the handling of the *Fuqua* and *Caudill* Actions against Plaintiffs, including acting as a liaison between Horizon and its defense counsel in those and other cases, and communicating with other lawyers and senior management employed by Horizon about the cases. 2d Am. Compl.

15

¶¶ 40, 41.

 2. He was privy to the facts and issues surrounding insurance coverage for the *Fuqua* and *Caudill* Actions. Id. ¶ 44.

 3. He owes a duty of loyalty and confidence to Horizon to protect attorney-client communications, his attorney work product, and related information from disclosure to any third party, including ACIC. Id. ¶ 45.

 4. As ACIC's agent, he has overseen the handling of the underlying actions, including the *Fuqua* and *Caudill* Actions, against Horizon. Insurance coverage issues have arisen in these cases, and Bernstein has adopted a claims position similar to that of St. Paul that is directly adverse to Horizon's interests. Id. ¶¶ 47, 48.

 5. A substantial risk exists that he has used confidential information obtained while working at Horizon to formulate positions adverse to its interests. Id. ¶ 51.

 As was the case with damages, there is a logical disconnect here between the factual allegations about Bernstein's actions and the claimed harm to Plaintiffs. If Bernstein was privy to information about coverage defenses for punitive damages, that information came to him from St. Paul while he was working for Horizon. Plaintiffs allege, in fact, that Bernstein "received communications from St. Paul" in which "St. Paul sets forth numerous potential arguments against insurance coverage for punitive or exemplary damages . . . ." 2d Am. Compl. ¶¶ 42, 43. Also, the information would seem to be of a legal rather than factual nature. If that is the case, it may be unseemly for him

16

to switch sides and use those arguments against his former client, but it does not constitute misuse of client confidences. Nor can it be said that this switching of sides and loyalties would cause irreparable harm to Horizon.[4] Even if Bernstein's actions might constitute a violation of the rules of professional conduct for attorneys, if they cause no damages or other harm to the former client, they are a matter for the state bar disciplinary board, not a court of law.

I cannot say with certainty, however, that Plaintiffs could not possibly prove a set of facts that would entitle them to an injunction. It may be that Bernstein was privy to some types of confidences that could, if revealed to ACIC, be harmful to Horizon in the dispute over insurance coverage. On the other hand, he may not possess any confidences or secrets of Horizon that could in any way affect this dispute. Therefore, rather than dismiss the claim for injunctive relief at this time, I will require Plaintiffs to provide a more definite statement, if they can do so consistent with Rule 11, specifying (1) the general nature or type of confidential information possessed by Bernstein,[5] and (2) how revealing that information could possibly irreparably harm Plaintiffs with respect to the

---

[4] There are other odd things about this claim. Plaintiffs seek a permanent injunction, not a TRO or preliminary injunction. Preliminary injunctive relief would have been disposed of quickly, whereas a permanent injunction would come only at the end of the case. This lack of urgency, coupled with the fact that Plaintiffs waited nearly a year and a half after Bernstein became employed by ACIC to seek to enjoin him, raises issues of the *bona fides* of this claim.

[5] This does not require Plaintiffs to reveal any secrets or confidences they may have imparted to Bernstein, which would defeat the purpose of the attorney-client privilege, *see* Coles v. Arizona Charlie's, 973 F. Supp. 971, 974 (D. Nev. 1997). If they believe it necessary, Plaintiffs may seal this information for *in camera* review.

17

issue of insurance coverage for punitive damages in the underlying actions.

Accordingly, the Sixth Claim for Relief against Defendant Bernstein will be dismissed; the Seventh Claim for Relief will be dismissed if Plaintiffs do not file a more definite statement.  The remainder of the action will be stayed until such time as the Texas court determines the appropriate forum.  If the Texas court decides venue is properly laid in that district, this case will be dismissed.

IT IS THEREFORE ORDERED that Defendant Marc A. Bernstein's Motion to Dismiss is hereby GRANTED IN PART;

IT IS FURTHER ORDERED that the Sixth Claim For Relief will be DISMISSED;

IT IS FURTHER ORDERED that the Seventh Claim For Relief will be dismissed unless Plaintiffs file, consistent with Rule 11, a More Definite Statement as described above by not later than May 15, 2000;

IT IS FURTHER ORDERED that Plaintiffs' Motion For Leave to File Supplemental Brief is hereby DENIED;

IT IS FURTHER ORDERED that Defendant American Continental Insurance Company's Motion to Stay is hereby GRANTED; the case between Plaintiffs and Defendant American Continental Insurance Company is hereby STAYED pending a decision on proper venue by the federal district court in Texas.

_____
UNITED STATES DISTRICT JUDGE

18

Counsel for Plaintiffs:  Ronald Siegel, SUTIN, THAYER & BROWNE, Albuquerque, N.M.; and Joshua Gold, Sandra L. Mallenbaum and Lauren B. Sobel, ANDERSON KILL & OLICK, New York, N.Y.

Counsel for Defendant ACIC:  David A. Freedman, FREEDMAN, BOYD, DANIELS, HOLLANDER, GOLDBERG & CLINE, Albuquerque, N.M.; and Robert D. Allen and Linda M. Dedman, BAKER & MCKENZIE, Dallas, Tex.

Counsel for Defendant Bernstein:  Charles R. Peifer and Cerianne L. Mullins, BROWNING & PEIFER, Albuquerque, N.M.